Briana M. Givens, SBN 321112
bgivens@thegllaw.com
Monique S. Larmond, SBN 319846
mlarmond@thegllaw.com
GIVENS & LARMOND LAW GROUP, LLP
5777 West Century Blvd.
Suite 1110, Office 125
Los Angeles, CA 90045
Phone: (310) 730-8021
Fax: (310) 242-4875

Attorneys for Plaintiff Stephanie Ortiz

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ORTIZ, an individual,<br><br>   Plaintiff,<br>vs.<br><br>FEDERAL BUREAU OF PRISONS ATWATER, MERRICK GARLAND, ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE,<br><br>   Defendants. | CASE NO. 1:22−CV−00122−JLT−SKO<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>Title VII –Hostile Work Environment and Retaliation<br><br>42 U.S.C. §2000e, *et seq*. |

TO THE HONORABLE COURT:

   Plaintiff Stephanie Ortiz, through her undersigned counsel, hereby makes the following amended allegations against the defendants.

**JURISDICTION AND VENUE**

   1. This Court has original jurisdiction in this proceeding pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action is one arising under the federal civil rights laws.

   2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e)(1)(B) and (C), as this is an action against the United States that does not involve real property substantial portion

of the underlying acts and omissions occurred in this judicial district, and the Plaintiff resides in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff has exhausted her administrative remedies. On January 9, 2020, Plaintiff submitted a formal complaint for discrimination with the U.S. Equal Employment Opportunity Commission. An investigation launched from March 31, 2020 to April 20, 2020. On May 26, 2020, the report of investigation was submitted to the EEO officer. On September 28, 2021, the EEOC issued a final agency decision.

4. Plaintiff's claims are based on ongoing harassment rising to the level of a hostile environment, based on gender or as retaliation for opposing discrimination. The continuing violation doctrine of *National Railroad Passenger Corp. (Amtrak) v. Morgan*, 536 U.S. 101 (2002), dictates that all the misconduct plaintiff suffered is actionable so long as at least one harassing act occurred within the limitations period. Acts of harassment, both retaliatory and gender-based, occurred close in time to plaintiff's EEO complaint and filing her first complaint in this Court, making the whole pattern of conduct actionable.

## PARTIES

5. Plaintiff Stephanie Ortiz ("Plaintiff" or "Officer Ortiz") is a citizen and resident of the State of California. During the time relevant to the cause of actions stated herein, Officer Ortiz was employed by the United States Federal Bureau of Prisons, at USP Atwater. Officer Ortiz has been employed by the United States Federal Bureau of Prisons from 2012 to the present as a Senior Officer Specialist, GS-08.

6. Defendant United States Federal Bureau of Prisons Atwater ("BOP") is an agency of the United States.

7. Defendant United States Department of Justice ("DOJ") is an agency of the United States.

8. Defendant Merrick Garland ("Garland") is the Attorney General of the United States Department of Justice. Garland is sued in his official capacity and had no personal involvement in the acts alleged herein.

///

## FACTUAL ALLEGATIONS

6. Officer Ortiz began her employment with the BOP on or around June 2012, working in the housing unit, where all other correctional officers start at the BOP. Officer Ortiz worked hard and worked her way up to the Special Housing Unit, where she was the *only* female to work in that department for more than half of her career working at the BOP. Officer Ortiz witnessed other female officers come and go in her department, but she stayed and continued to work hard because she loved her job, until September 19, 2019, when things changed.

7. On or about September 19, 2019, Officer Ortiz was assisting an inmate to be examined by Dr. Richard Paltenghi ("Dr. Paltenghi") While Officer Ortiz was waiting outside of the medical examination room for the male inmate to be examined, Dr. Paltenghi stormed out of the room shaking his wet hands offensively towards Officer Ortiz. He began to yell and berate her regarding the condition of the examination room. He yelled at Officer Ortiz regarding the dirty floors and lack of paper towel in the examination room. Officer Ortiz explained that she does not have access to the examination room. He continued to yell and asked, "Why are you still talking to me while my hands are still wet?" He then ordered Officer Ortiz to get him paper towels, clean the examination room and take out the trash, although it was not Officer Ortiz's duty nor role to clean the examination room.

8. Dr. Paltenghi belittled and embarrassed Officer Ortiz. He demeaned her to point where the inmate asked Officer Ortiz if she was okay because he has never heard anyone speak to her in that harsh manner.

9. Thereafter, Dr. Paltenghi went to Senior Officer Kyle Gibson's office and told him "It was [his] job to fill [the trash can] and woman's job to throw out the trash, enough said."

10. Officer Ortiz complained about the gender discriminatory treatment she endured to Lieutenant Glenn Cobb and Lieutenant Joel Zarazoga, her immediate supervisor.

11. After making the complaints, Officer Ortiz suffered additional harassment, threatening glares and intimidation by Dr. Paltenghi. He began to follow Officer Ortiz around the prison. On numerous occasions he even followed her into her post, where she would go to try to escape him. He would stand very close behind Officer Ortiz, in a domineering manner, looking down at her

in a way that made her very uncomfortable. He would follow her down into the lockdown unit, although he had no business going into that unit.

12. On numerous occasions prior to making her informal complaint of discrimination to an EEO counselor, Officer Ortiz complained about the gender discriminatory and harassing treatment outlined above. Nonetheless, despite Officer Ortiz's complaints, the gender hostile environment continued, and retaliatory behavior began. Indeed, after Officer Ortiz began complaining the gender based hostile environment persisted continue despite her complaints, and she was then subject to retaliation as a result.

13. On or about October of 2019, Officer Ortiz was contacted by the EEO Counselor S. Sawyer who assisted her in filing a complaint against the BOP.

14. On November 7, 2019, Dr. Paltenghi came into the Special Housing Unit during Plaintiff's shift. Officer Ortiz was startled by his presence because she thought the BOP were taking measures to keep Dr. Paltenghi away from her. She immediately began experiencing anxiety as he glared at her. She took measures to remove herself from his view so he could no longer see her.

15. Specifically, Dr. Paltenghi entered the Special Housing Unit during Plaintiff's shift on January 6, 2020, January 13, 2020, January 21, 2020, January 27, 2020, February 5 and 6, 2020, and March 4 and 26, 2020. To date, he continues to intentionally enter the Special Housing Unit during days that Officer Ortiz is on duty and Defendants continue to allow this to happen.

16. Officer Ortiz repeatedly complained about Dr. Paltenghi's behavior, and she felt Defendants were not doing enough to stop the ongoing harassment. On or about November 20, 2019, Human Resources manager, Suzie Barela told Officer Ortiz that it is inevitable not to see Dr. Paltenghi and that he is the only medical doctor at the prison, which left Officer Ortiz no choice but to suffer the ongoing harassment and intimidation.

17. Officer Ortiz is not the only female officer who has submitted complaint to Defendants regarding Dr. Paltenghi's conduct and safety risks violations. On or about December of 2019, a fight between three inmates broke out and Dr. Paltenghi was radioed to come assist with the injuries sustained by the inmates. Dr. Paltenghi was non-responsive to numerous calls.

When another officer found Dr. Paltenghi he was in a back office with his radio turned off. Dr. Paltenghi yelled at female officers and told female Officer Putnam "When there is a fight, one you 'girls' need to fetch me." Officer Lisa Arceo reported the incident as sex discrimination and informed management that this was not the first time, he had made derogatory comments or failed to follow safety protocols. After Officer Arceo complained, Dr. Paltenghi began removing her from crucial email correspondence pertaining to her job responsibilities.

18. On or about April 2022, after filing her initial complaint with this Court, Officer Ortiz received a satisfactory score on her evaluation, when all the years prior to bringing this complaint, she received an excellent score on her evaluations.

19. The culmination of this ongoing misconduct was when Officer Ortiz was placed under an abrupt and forced leave of absence, where defendants requested, she receive a clearance letter from her healthcare provider, as a result of stress related seizures. If Officer Ortiz could not provide this, she would be terminated. Officer Ortiz provided clearance from her primary care doctor, which was denied because they would like her to receive clearance from a neurologist. Officer Ortiz requested an extension to provide this notice by a neurologist and the defendants unjustly denied the request.

20. Not coincidentally, this leave was instituted after Officer Ortiz filed her first complaint with this Court for a hostile work environment and retaliatory harassment.

21. On or about April 15, 2022, the American Federation of Government Employees, Council of Prisons – Western Region, issued a statement calling for the immediate resignation of Western Regional Director Rios. The allegations included the Regional Director's failure to uphold ethical rules, failure to provide whistleblower protection and rights, allowing subordinate leaders to commit whistleblower retaliation, circumvent disciplinary policies and commit safety infractions.

22. All these acts were in furtherance of the longstanding gender hostile environment to which Officer Ortiz had been subjected, but also the retaliation to which she began to be subjected to after filing this instant lawsuit.

23. It had been Officer Ortiz's goal to retire with the Bureau of Prisons, but that is no longer possible. Officer Ortiz has lost out on a fulfilling and rewarding Bureau of Prisons career because of the above detailed misconduct.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

Gender Hostile Environment in Violation of Title VII

42 U.S.C. § 2000e-2(a)

24. Officer Ortiz realleges and incorporates the foregoing allegations as if set forth herein.

25. Officer Ortiz was subjected to an intimidating, offensive and/or hostile work environment after September 2019, as alleged above. This harassment occurred on a frequent basis. Most of the acts of harassment to which Officer Ortiz was subjected were classic acts of harassment, i.e., ridicule, intimidation, insult, but some the pattern of harassment also included acts that could, if they occurred alone, constitute independent adverse employment actions. However, while discrete acts cannot alone form the basis of a hostile work environment claim, they certainly can combine with other acts of harassment to constitute a pervasive and hostile environment. Indeed, Morgan itself held that a jury could consider discrete acts as part of a hostile work environment claim. *See, e.g., Nat'l R.R. Passenger Corp.*, 536 U.S. at 117.

26. Officer Ortiz belongs to a statutorily protected category. Officer Ortiz's gender was the motivating factor for the work environment to which she was subjected.

27. Officer Ortiz was subjected to unwelcome verbal and physical conduct by Dr. Paltenghi, when he ridiculed her and splashed water from his hands on her. Officer Ortiz was subjected to this demeaning treatment because she was a female officer.

28. Officer Ortiz's work environment was sufficiently severe, pervasive and/or offensive to have

altered the terms or conditions of her employment and to have been considered abusive and wrongful by a similarly situated and reasonable female employee.

29. Officer Ortiz subjective perceived her work environment to have been intimidating, offensive and/or hostile.

FIRST AMENDED COMPLAINT

30. Because of the intimidating, offensive and/or hostile work environment to which she was subjected, and Defendants continuing to foster and condone a hostile environment, Officer Ortiz is entitled to an award of compensatory damages, attorney's fees and expenses, and other relief permitted under law.

## SECOND CAUSE OF ACTION

### Retaliation for Engaging in Conduct Protected by Title VII,

42 U.S.C. § 2000e-3(a)

31. Officer Ortiz realleges and incorporates the foregoing allegations as if set forth herein.

32. Officer Ortiz engaged in or was engaging in an activity protected under Title VII, that is (1) her complaints of gender based mistreatment and the perpetuation of a hostile work environment beginning in approximately September 2019, (2) her initial informal complaints of discrimination and hostile work environment based on gender in September 2019; (3) her follow-up complaints to her designated EEO official between September 2019 through March 2020; and (4) her formal EEO complaint in 2020. Various informal and formal means of complaints can support a Title VII reprisal claim. *See Crawford v. Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271 (2009)

33. In the aftermath and based on these protected activities, Officer Ortiz was subjected to harassment not only because of a gender hostile environment, but also further harassment based on her protected activity, as alleged above. Acts which in and of themselves may qualify as adverse employment actions, can also constitute a pattern of retaliation that is independently actionable on that basis. Indeed, many courts have recognized retaliatory harassment as actionable when it creates a hostile work environment motivated in part by retaliation. *See Noviello v. City of Boston*, 398 F.3d 76, 92-93 (1st Cir. 2005) (holding coworkers' ostracism and name-calling in retaliation for plaintiff's filing a sexual harassment complaint against their supervisor, which got him fired, was actionable retaliation).

34. Further, Defendants actions perpetuate discrimination and continue to foster a hostile retaliatory work environment, since "retaliation against a person because that person has complained about sex discrimination is another form of intentional sex discrimination…

retaliation is an intentional act." *See Gomez-Perez v. Potter*, 553 U.S. 474, 480 (2008), citing *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005).

35. Officer Ortiz's protected activities were a motivating factor for the subsequent retaliation to which she was subjected.

36. Defendants have retaliated against and threatened Officer Ortiz's position with the BOP as a result of Officer Ortiz making a complaint for gender discrimination.

37. Officer Ortiz suffers substantial economic and noneconomic injuries because of this retaliation.

38. Because of the retaliation to which she was subjected, Officer Ortiz is entitled to an award of compensatory damages, attorney's fees and expenses, and other relief permitted under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

   a. Full compensatory and punitive damages;

   b. Reasonable attorneys' fees and all expenses and costs of this action;

   c. Injunctive relief prohibiting future retaliation by the Bureau of Prisons, the appointment of a special master regarding complaints of retaliation so that they may be monitored and addressed by this Court without years of litigation, and special posting of the outcome of this claim, as well as the rights and remedies of affected employees.

   d. Pre-judgment interest; and

   e. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

//

//

//

//

//

//

**DEMAND FOR A JURY TRIAL**

Plaintiff demands a trial by jury of all issue so triable in this action.

DATED: May 16, 2022          GIVENS & LARMOND LAW GROUP, LLP

By: _____
Briana M. Givens
Attorney for Plaintiff Stephanie Ortiz