UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ORTIZ, | Case No.: 1:22-cv-00122 JLT SKO |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| FEDERAL BUREAU OF PRISONS, et al., | (Doc. 11) |
| Defendants. | |

Stephanie Ortiz alleges she was subjected to a hostile work environment and retaliation while employed by the Federal Bureau of Prisons. (*See generally* Doc. 10.) She asserts two claims pursuant to Title VII of the Civil Rights Act of 1964 against the BOP; Merrick Garland, Attorney General, in his official capacity; and the U.S. Department of Justice. (*Id.* at ¶¶ 6-8.) Defendants move to dismiss the First Amended Complaint, arguing that Plaintiff does not state a plausible hostile work environment claim and that she failed to exhaust her administrative remedies with respect to her retaliation claim. (Doc. 11.) Defendants seek dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**I.     Background and Allegations**

In September 2019, Plaintiff alleges that Dr. Paltenghi, a prison doctor at U.S. Penitentiary

1

Atwater, "stormed" out of an examination room, shook his wet hands "offensively" toward Plaintiff, yelled at her regarding the condition of the examination room, and ordered her to clean it despite her having no duty to do so. (Doc. 10 at ¶ 7.) This "belittled and embarrassed" Plaintiff. (*Id*. at ¶ 8.) Before reporting the incident to her supervisor, Plaintiff alleges Dr. Paltenghi went to a senior officer's office and told him "[i]t was [his] job to fill [the trash can] and woman's job to throw out the trash, enough said." (*Id*. at ¶ 9.) She reported the incident to her supervisors, at which point Plaintiff "suffered additional harassment, threatening glares and intimidation" by Dr. Paltenghi. (*Id*. at ¶¶ 10-11.) He would "stand very close" behind Plaintiff and "follow" her into units he "had no business" entering. (*Id*. at ¶ 11.)

In October 2019, an Equal Employment Opportunity Counselor contacted Plaintiff to assist her in filing a complaint against the BOP.[1] (Doc. 10 at ¶ 13.) About a month later, Dr. Paltenghi entered the unit where Plaintiff worked. (*Id*. at ¶ 14.) She was "startled" and began "experiencing anxiety" as Dr. Paltenghi "glared" at her. (*Id*.) She removed herself from his view. (*Id*.) After "repeatedly complain[ing]," Human Resources Manager told Plaintiff that seeing Dr. Paltenghi was "inevitable" as he was the only doctor at the prison. (*Id*. at ¶ 16.) Plaintiff subsequently alleges that on eight specific occasions, Dr. Paltenghi "entered" the unit, beginning on January 6, 2020 and ending on March 26, 2020. (*Id*. at ¶ 15.) According to Plaintiff, Dr. Paltenghi continues to "intentionally enter" the unit. (*Id*.) On January 9, 2020, Plaintiff filed a formal complaint with the U.S. Equal Employment Opportunity Commission. (*Id*. at ¶ 3.) An investigation ensued, and a final decision was ultimately issued on September 28, 2021. (*Id*.)

In April 2022, after Plaintiff initiated this action, she received a "satisfactory" evaluation score as opposed to her normal "excellent" score. (Doc. 10 at ¶ 18.) She was then "placed under an abrupt and forced leave of absence, where [D]efendants requested, she receive a clearance letter from her healthcare provider, as a result of stress related seizures." (*Id*. at ¶ 19-20.) Her request for an extension of time to obtain proper medical clearance was denied. (*Id*. at ¶ 19.)

---

[1] Plaintiff does not clearly identify whether she filed her EEO charge in October 2019 or on January 9, 2020. (*See* Doc. 10 at ¶¶ 3, 13.) Because the latter date is alleged unambiguously, the Court assumes the charge was filed on January 9, 2020.

## II. Motion to Dismiss under 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## III. Discussion and Analysis

### A. Judicial Notice

Defendants request judicial notice of a Notice of Intent letter issued by the EEOC based upon the assigned Administrative Law Judge's examination of the record, as well as the Decision and Order Entering Judgment. (*See* Doc. 11-2.) The Court may take judicial notice of a fact that "is not subject to

1  reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or
2  (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be
3  questioned." Fed. R. Evid. 201. Accuracy is only the part of the inquiry, however.

4        While it is well-established that the Court may take judicial notice of such administrative
5  agency documents, *see, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001-02 (9th Cir.
6  2018); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003), it need not take as true the factual
7  findings within a record—or in this case—the Administrative Law Judge's summary of the facts and
8  legal reasoning of the claims asserted by Plaintiff. (*See* Docs. 11-1 at 9, 11-2 at 6-11.) "Just because
9  the document itself is susceptible to judicial notice does not mean that every assertion of fact within
10 that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999; *see also Ritchie*, 342 F.3d
11 at 909 (holding that while courts may take judicial notice of "records and reports of administrative
12 bodies" . . . [t]he underlying facts relevant to the adjudication of [the] case . . . do not remotely fit the
13 requirements of Rule 201") (internal quotation marks omitted); *Taylor v. Blank*, 2014 WL 1577313, at
14 *4 (E.D. Cal. Apr. 17, 2014) (taking judicial notice of the fact that the EEOC decisions denied
15 plaintiff's claims but holding that "the factual background and legal reasoning contained within the
16 two orders are not subject to judicial notice"). A court in this district clarified it well:

17       The existence and authenticity of a document which is a matter of public record
         is judicially noticeable such as the authenticity and existence of a particular order,
18       pleading, public proceeding, or census report, which are matters of public record,
         but the veracity and validity of their contents (the underlying arguments made by
19       the parties, disputed facts, and conclusions of fact) are not.
20

21 *Cactus Corner, LLC v. U.S. Dep't of Agric.*, 346 F. Supp. 2d 1075, 1099 (E.D. Cal. 2004), *aff'd*, 450
22 F.3d 428 (9th Cir. 2006).

23       Accordingly, the Court takes judicial notice of the fact that the EEOC issued a Notice of Intent
24 to Issue a Decision Without a Hearing on September 10, 2021. (Doc. 11-2 at 6-12.) Similarly, the
25 Court takes judicial notice of the fact that the EEOC issued a Decision and Order Entering Judgment
26 on September 28, 2021, and that in the order, the assigned Administrative Judge entered summary
27 judgment in favor of EEOC. (*Id*. at 4-5.) The dates and denial "can be accurately and readily
28 determined from" the documents. *Khoja*, 899 F.3d at 1001 (quoting Fed. R. Evid. 201(b)(2) (internal

quotation marks omitted). Likewise, the parties do not dispute the documents' existence or authenticity. *Cactus Corner,* 346 F. Supp. 2d at 1099. However, the Court declines to take judicial notice of the factual summaries or legal reasoning contained within the Notice. *Khoja*, 899 F.3d at 999; *Taylor*, 2014 WL 1577313, at *4.

### B. Sex Discrimination – Hostile Work Environment

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). This guarantees "the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). A plaintiff may show discrimination in violation of Title VII by proving disparate treatment or impact, or by establishing the existence of a hostile work environment. *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). In the FAC, Plaintiff identifies that her section 2000e-2(a) claim is based on a hostile work environment. (*See* Doc. 10 at ¶¶ 24-30.) More specifically, she alleges "[her] gender was the motivating factor for the work environment to which she was subjected." (*Id.* at ¶ 26.)

To state a hostile work environment claim under Title VII based upon sex, an employee must allege that: "(1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. California Dept. of Corrections*, 419 F.3d 885, 892 (9th Cir. 2005); *accord Simmons v. Safeway, Inc.*, 820 F. App'x 579, 580 (9th Cir. 2020). Defendants do not dispute that Plaintiff was subjected to unwelcome, harassing conduct, which satisfies the first two elements. The primary dispute is whether the alleged conduct was "severe and pervasive" enough to alter Plaintiff's conditions of employment. (*See generally* Docs. 11, 16.)

A hostile work environment is one that "is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21 (quoting *Meritor*,

5

477 U.S. at 65) (internal citations omitted); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed."). Whether a work environment is hostile is determined by looking at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998)). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995), *as amended* (Apr. 24, 1995). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position[.]" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998); *see also EEOC v. Prospect Airport Servs.*, 621 F.3d 991, 998 (9th Cir. 2010) (explaining that courts consider both the victim's and a reasonable victim's perspective).

Annoying or merely offensive comments in the workplace are not actionable. *Lyle v. Warner Bros. Television Prods.*, 132 P.3d 211, 223 (Cal. 2006). A plaintiff must show a "concerted pattern of harassment of a repeated, routine or a generalized nature." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal citation and quotation marks omitted). The Court further illuminated:

> These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."

*Id.* (citations omitted).

Put briefly, Plaintiff alleges that in September 2019, Dr. Paltenghi yelled at her, shook his hands at her, and made her clean an examination room. (Doc. 10 at ¶ 7.) He then made a gender-related comment about the incident to a third party. (*Id*. at ¶ 9.) Plaintiff does not allege she heard the

comment personally, nor does she allege at what point she gained the information to attribute the comment to her hostile work environment. Two months later, in November 2019, Dr. Paltenghi entered the unit in which Plaintiff worked and "glared" at her. (*Id.* at ¶ 14.) She began feeling anxious and removed herself from view. (*Id.*) Dr. Paltenghi proceeded to "enter" the unit between January 2020 and March 2020. (*Id.* at ¶ 15.)[2] She filed a formal EEOC complaint on January 9, 2020. (*Id.* at ¶ 3.)

Taken as a whole, these allegations are not sufficient to plead a hostile work environment claim. In order for an environment to be considered hostile, the conduct must have unreasonably interfered with Plaintiff's work performance. *Clark County*, 532 U.S. at 270-71. Plaintiff does not allege that Dr. Paltenghi's conduct resulted in the inability to perform her job. On one occasion, Plaintiff became startled and anxious when Dr. Paltenghi "glared" at her, and she removed herself from his view. She does not allege, however, that she was unable to complete her shift or perform her tasks because of his conduct.

Moreover, isolated incidents do not amount to a hostile work environment unless "extremely serious." *Faragher*, 524 U.S. at 788; *see also, e.g., Brooks*, 229 F.3d at 924 (explaining that isolated incidents are rarely sufficient because "the employer will have had no advance notice and therefore cannot have sanctioned the harassment beforehand"); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (finding "two isolated offensive remarks" combined with other "unfair treatment" was not severe or pervasive enough to create a hostile work environment). Plaintiff does not allege that she had any further contact with Dr. Paltenghi after the initial yelling incident and subsequent glaring, and Dr. Paltenghi's conduct was not extremely serious. Instead, Plaintiff alleges that Dr. Paltenghi merely entered the unit in which she worked on eight specific dates and does not allege any additional contact or interaction with Dr. Paltenghi, the only medical doctor at U.S.P. Atwater. His conduct, in the aggregate, would not be considered severe and pervasive to a reasonable person in Plaintiff's position. *See Faragher*, 524 U.S. at 788 (holding

---

[2] According to Plaintiff, Dr. Paltenghi entered the Special Housing Unit during Plaintiff's shift on January 6, 2020, January 13, 2020, January 21, 2020, January 27, 2020, February 5 and 6, 2020, and March 4 and 26, 2020. (Doc. 10 at ¶ 15.)

7

sporadic use of abusive language is an "ordinary tribulation[] of the workplace," intended to be filtered out by Title VII); *see also Vasquez*, 349 F.3d at 643-44 (finding that in addition to other misconduct, two incidents of yelling was insufficient to create a hostile work environment); *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1020 (9th Cir. 2018) (hypothesizing that "even if . . . one-time comments could somehow be construed as a veiled reference to [plaintiff's] menstrual cycle, those isolated comments would not alone support a claim for a hostile work environment"); *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1111-12 (9th Cir. 2000) (finding no triable issue as to "whether the conduct was frequent, severe or abusive enough to interfere unreasonably with [plaintiff's] employment" where she was, only in part, stared at in a "hostile fashion").

Accordingly, because the alleged conduct was not severe or pervasive, Plaintiff has not alleged facts sufficient to support a claim for discrimination based on a hostile work environment. Defendants' motion is **GRANTED** as to this claim.

### C. Retaliation

Title VII also makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII] . . .." 42 U.S.C. § 2000e-3(a).

Plaintiff's second cause of action is for retaliation in violation of Title VII. (Doc. 10 at ¶¶ 31-38.) Defendants argue Plaintiff failed to exhaust her administrative remedies with respect to this claim, as the last two alleged incidents in her FAC were not included or reasonably related to her EEOC charge. (Doc. 11-1 at 10.) As such, Defendants seek dismissal of the claim in its entirety. (*See id.*) Importantly, Plaintiff limits her challenge to her "most recent experience of retaliation," a forced medical leave of absence. (Doc. 14 at 7.) She asserts the experience "ties back to the initial purpose of her EEOC complaint." (*Id.*) The Court will therefore limit its discussion to Plaintiff's retaliation claim and the latest allegation of retaliation.

"Even when an employee seeks judicial relief for claims not listed in the original EEOC charge, the complaint 'nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge.'" *Mayo v. Recycle to Conserve, Inc.*, 795 F. Supp. 2d 1031, 1046

8

(E.D. Cal. 2011) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002)). An allegation is "reasonably related" if it either "'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which can *reasonably be expected* to grow out of the charge of discrimination.'" *Id.* (emphasis in original); *accord Head v. Wilkie*, 784 F. App'x 503, 505 (9th Cir. 2019) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)); *see also Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1476 (9th Cir. 1989) ("[T]he court inquires whether the original EEOC investigation would have encompassed the additional charges."); *Wyatt v. City of Burlingame*, 2017 WL 565303 at *11 (N.D. Cal. Feb. 13, 2017) (finding a failure to exhaust because "the language of the charge [does not] suggest that an investigation of Plaintiff's harassment allegations against one supervisor would have reasonably uncovered allegations about her subsequent termination for filing the 2013 EEOC Charge.").

Plaintiff filed her formal EEOC charge on January 9, 2020 and filed this civil action in April 2022. (Doc. 10 at ¶¶ 3, 18.) At some point after April 2022, Plaintiff alleges she was placed under "an abrupt and forced leave of absence." (*Id.* at ¶ 19.) She requested an extension of time upon learning that her medical clearance was to be provided by her neurologist as opposed to her primary care doctor. (*Id.*) She was threatened with termination if she did not comply. (*Id.*) Her request was subsequently denied, but she was not terminated. (*See id.* at ¶¶ 5, 19.) Plaintiff asserts that "the retaliation to which she began to be subjected to [occurred] after filing this instant lawsuit." (*Id.* at ¶ 22.) More specifically, Plaintiff contends that "not coincidentally," the "forced" medical leave was instituted after she filed this action. (*See id.* at ¶¶ 19-20.)

First, from a timing perspective alone, the forced leave and extension denial incidents in 2022 were not—and could not have been—included in Plaintiff's 2020 EEOC charge. This creates an issue of notice for Defendants. *See Freeman*, 291 F.3d at 636 ("And while it is true that we construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading, there is a limit to such judicial tolerance when principles of notice and fair play are involved.") (internal citations and quotation marks omitted). Nevertheless, Plaintiff alleges that the misconduct she suffered is actionable because the acts "occurred close in time to [her] EEO complaint and filing her first complaint in this Court." (Doc. 10 at ¶ 4.) However, the incidents

occurred sometime after April 2022, while her EEOC charge was filed on January 9, 2020. The Court does not find this gap to be "close in time." (*Id*.)

Second, even if the Court assumed that every factual allegation predating January 9, 2020 was included in the EEOC charge, those allegations are limited to a hostile work environment and sexual harassment by Dr. Paltenghi. (*See* Doc. 10 at ¶¶ 6-16.)[3] Moreover, even considering the allegations of incidents occurring *after* the charge was filed, the last date Plaintiff expressly alleges she was in Dr. Paltenghi's presence was on March 26, 2020, still more than two years before initiating this civil action. (*See id*. at ¶ 15.)[4]

Finally, although Plaintiff now argues that the forced leave and denied extension request were related to the "initial purpose" of her EEOC charge, she expressly alleges in her FAC that the forced leave was in retaliation for filing *this action*. (Doc. 10 at ¶¶ 20, 22.) She does not allege the retaliation was based on any prior incidents of alleged sexual harassment. Therefore, the Court finds no reasonable relation between Plaintiff's allegedly "forced" medical leave of absence—which did not involve Dr. Paltenghi—and her allegations of sexual harassment by Dr. Paltenghi two years prior. An EEOC investigation could not have reasonably uncovered allegations of a forced leave based on her prior charge of sexual harassment. *Wyatt*, 2017 WL 565303 at *11; *see also Green*, 883 F.2d at 1476 (finding that an investigation of incidents of sexual harassment and denied relocation requests would not encompass subsequent claims of denied medical leave). Also notable is that Plaintiff does not meaningfully argue otherwise. Thus, Defendants' motion to dismiss is **GRANTED** as to Plaintiff's forced medical leave of absence and denied extension request *only*. To the extent Plaintiff relies upon these incidents in stating her retaliation claim, her claim is **DISMISSED**.

## IV. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

---

[3] Plaintiff makes conclusory allegation that she was subjected to retaliation, which the Court declines to entertain. (Doc. 10 at ¶ 12 ["Nonetheless, despite [Plaintiff's] complaints, the gender hostile environment continued, and retaliatory behavior began. Indeed, after [Plaintiff] began complaining the gender based hostile environment persisted continue despite her complaints, and she was then subject to retaliation as a result."].)
[4] Similarly, Plaintiff alleges that Dr. Paltenghi continues to enter the same building as her but provides no other factual allegations explaining the nature of her interactions with him, if any. (*Id*. at ¶ 15.)

decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally should be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

Plaintiff requests leave to amend should the Court dismiss "any aspect" of her claims. (Doc. 14 at 8.) It is possible that the deficiencies identified herein may be cured, specifically in terms of Title VII exhaustion. Furthermore, it does not appear amendment would cause undue delay at this juncture, and there is no indication Plaintiff acted in bad faith. Thus, Plaintiff's request for leave to amend is **GRANTED**.

### IV.   Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendants' motion to dismiss (Doc. 11) is **DENIED** with the following exceptions:
   a. The motion is **GRANTED** as to Plaintiff's Title VII retaliation claim based upon her extension denial and leave of absence; and **DENIED** in all other respects.
   b. The motion is **GRANTED** as to Plaintiff's Title VII hostile work environment claim. This claim is **DISMISSED** without prejudice.
2. Plaintiff **SHALL** file any Second Amended Complaint within 30 days of the date of service of this order. **If Plaintiff fails to file an amended complaint, the action may be dismissed without prejudice for failure to prosecute and failure to obey the Court's order**.

IT IS SO ORDERED.

Dated:   **January 31, 2023**                                    /s/ Jennifer L. Thurston
                                                                              UNITED STATES DISTRICT JUDGE